UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CV-61193-VALLE

<u>CONSENT CASE</u>

CHRISTOPHER I. FARIAS,

      Plaintiff,

v.

FRANK BISIGNANO,[1]
Commissioner of the Social
Security Administration,

      Defendant.

_____/

## <u>ORDER ON MOTIONS FOR SUMMARY JUDGMENT</u>

THIS MATTER is before the Court on Plaintiff Christopher I. Farias' Motion for Summary Judgment (ECF No. 14) ("Plaintiff's Motion") and Defendant Commissioner of the Social Security Administration's Cross Motion for Summary Judgment (ECF No. 18) ("Defendant's Motion") (collectively, the "Motions"). Pursuant to Administrative Order 2023-18, this case is before the undersigned for all proceedings, including trial and entry of final judgment. *See* (ECF No. 5 at 1).

Accordingly, after due consideration of the record, the Motions, Defendant's Response (ECF No. 19), Plaintiff's Reply (ECF No. 20), and being otherwise fully advised on the matter, Plaintiff's Motion is **DENIED**, Defendant's Motion is **GRANTED**, and the Administrative Law Judge's decision (the "ALJ's Decision") is **AFFIRMED** for the reasons set forth below.

---

[1] Frank Bisignano was named Commissioner of the Social Security Administration in May 2025. Accordingly, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted for Martin O'Malley as Defendant in this suit. No further action is necessary to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.     PROCEDURAL HISTORY

In August 2021, Plaintiff protectively filed applications for a child's disability benefits and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*.  (R. 10, 229-44).[2]  In the applications, Plaintiff alleged a disability onset date of August 29, 1999, at age 9.  *Id.*  Plaintiff's applications were denied initially and again upon reconsideration.  (R. 10-22, 59, 67-68, 75).  Plaintiff requested a hearing, which was held telephonically, before Administrative Law Judge ("ALJ") Angela Neel on December 7, 2023.  (R. 10, 36-52 108, 190-10).  Plaintiff, accompanied by counsel, and a Vocational Expert ("VE") testified at the hearing.  (R. 36-52).  On February 9, 2024, the ALJ issued her Decision denying Plaintiff's applications and finding that Plaintiff was not disabled within the meaning of the Act.  (R. 7-27).  Thereafter, Plaintiff sought review of the ALJ's Decision.  (R. 225-28).

On June 5, 2024, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision."  (R. 1-6); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  Plaintiff now seeks judicial review of the ALJ's Decision.  (ECF No. 1); *see* 42 U.S.C. § 405(g).  Both parties have moved for summary judgment, and the Motions are ripe for adjudication.

## II.     STANDARD OF REVIEW

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record as a whole to support the ALJ's finding and whether the ALJ applied the correct legal standards in making her determination.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019); *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (citations omitted); *see* 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable

---

[2] All references are to the record of the administrative proceeding.  *See* (ECF No. 7).

person would accept as adequate to support a conclusion.  *Biestek*, 139 S. Ct. at 1154 (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *Carson*, 440 F. App'x at 864 (quoting *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (noting substantial evidence is "more than a scintilla, but less than a preponderance").  A court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted).  Even if evidence preponderates against the ALJ's Decision, the Court must affirm "if the decision is supported by substantial evidence."  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)).  Within this narrow role, however, courts do not act as automatons.  *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), *abrogated on other grounds by Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892 (11th Cir. 2022).  Rather, they "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence."  *Id.* (citation omitted).

To qualify for benefits, a claimant must be disabled within the meaning of the Act.  *See* 42 U.S.C. §§ 423 (standard for DIB), 1382 (standard for SSI).  A claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine eligibility, the ALJ employs a five-step sequential evaluation:

(1)     Is the person presently unemployed?
(2)     Is the person's impairment severe?

(3)    Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the "Listings")?

(4)    Is the person unable to perform his or her former occupation?

(5)    Is the person unable to perform any other work within the economy?

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  An affirmative answer to any of the above questions leads either to the next question or, on Steps 3 and 5, to a finding of disability.  *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  A negative answer to any question, other than Step 3, leads to a determination of "not disabled."  *Id.*

Importantly, the burden of proof rests on the claimant through Step 4.  *Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004).  At Step 4, the ALJ must consider: (i) the claimant's residual functional capacity ("RFC"); and (ii) the claimant's ability to return to his past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The regulations define RFC as that which an individual is still able to do despite the limitations caused by his impairments.  20 C.F.R. §§ 404.1545(a), 416.945(a).  The ALJ will "assess and make a finding about [the claimant's RFC] on all the relevant medical and other evidence" in the case.  20 C.F.R. §§ 404.1520(e), 416.920(e).  The RFC assessment is used to determine whether the claimant can return to his past relevant work under Step 4, and if so, "the ALJ will conclude that the claimant is not disabled."  *Phillips*, 357 F.3d at 1238 (citations omitted).  If a claimant cannot return to his past relevant work or there is no past relevant work, then the ALJ proceeds to Step 5.  *Id.*

At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Phillips*, 357 F.3d at 1239 (citation omitted).  The ALJ must determine if there is other work available in significant numbers in the national economy that the claimant can perform.  *Phillips*, 357 F.3d at 1239.  If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled.  *Id.*  Conversely, if the claimant

cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled. *Id.* The ALJ may determine whether the claimant can adjust to other work in the national economy by either: (1) applying the Medical Vocational Guidelines (contained within 20 C.F.R. Part 404, Subpart P, Appendix 2); or (2) using a Vocational Expert, who can opine on whether someone with the claimant's limitations can obtain employment in the national economy. *Id.* at 1239-40.

### III.   THE ALJ'S DECISION

In February 2024, after reviewing the evidence and conducting the sequential analysis, the ALJ concluded that Plaintiff "was not under a disability within the meaning of the [Act] from August 29, 1999, through the date of this [D]ecision." (R. 11).

At Step 1, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since August 29, 1999, the alleged onset date. (R. 13).

At Step 2, the ALJ concluded that Plaintiff had severe impairments of anxiety and autistic disorder with Asperger syndrome. *Id.* Conversely, the ALJ found that Plaintiff's overweightness, unspecified mood disorder, and alleged scoliosis were not severe impairments. *Id.*

At Step 3, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any one of the Listings. (R. 14-15).

At Step 4, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels with various non-exertional (mental) limitations. (R. 15-20). More specifically, the ALJ concluded that Plaintiff: (i) cannot operate a motor vehicle; (ii) can perform simple tasks and make simple work-related decisions; (iii) can frequently interact with supervisors; and (iv) can occasionally interact with coworkers and the general public. (R. 15). Because Plaintiff never worked and thus had no past relevant work, the ALJ proceeded to Step 5 of the sequential analysis. (R. 20, 21).

At Step 5, the ALJ found that, based on Plaintiff's RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform, such as a food service worker, meat clerk, and package sealer, all unskilled jobs with a medium exertional level and an SVP of 2.  (R. 21). Thus, the ALJ concluded that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy and therefore had not been under a disability from the alleged onset date through the date of the Decision.  (R. 22).

## IV.   <u>DISCUSSION</u>

On appeal, Plaintiff argues that the ALJ erred in: (i) finding Plaintiff did not meet Listing 12.10 for autism spectrum disorder; (ii) evaluating Plaintiff's subjective complaints and symptoms from his autism disorder; (iii) failing to resolve an apparent conflict between the RFC/VE's testimony and the DOT job description for one of the three jobs identified by the VE at Step 5; and (iv) failing to make a factual determination as to whether the two remaining non-conflicting jobs identified by the VE at Step 5 exist in significant numbers in the national economy.  *See generally* (ECF No. 14).  For the reasons discussed below, the undersigned finds that the ALJ applied the proper legal standards and that her Decision is supported by substantial evidence.  Accordingly, the ALJ's Decision is affirmed.

### A.   **The ALJ Properly Determined that Plaintiff Did Not Meet or Equal Listing 12.10**

At Step 3 of the sequential evaluation, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or equaled any one of the Listings.  (R. 14-15). In making this determination, the ALJ addressed Listing 12.06 (anxiety and obsessive-compulsive disorders) and Listing 12.10 (autism spectrum disorder).  (R. 14).  Plaintiff challenges only the ALJ's determination as to Listing 12.10.  (ECF No. 14 at 9-13).

As to Listing 12.10, the ALJ concluded that Plaintiff did not satisfy Paragraph B because he did not have an extreme limitation in one, or marked limitation in two, of the listed areas of mental functioning: (i) understanding, remembering, or applying information; (ii) interacting with others; (iii) concentrating, persisting, or maintaining pace; and (iv) adapting or managing oneself. (R. 14-15). The ALJ found that Plaintiff had no limitations in the first and third areas but had moderate limitations in the second (interacting with others) and mild limitations in the fourth (adapting or managing oneself) areas. *Id.* Plaintiff argues, however, that substantial evidence supports finding an "extreme limitation" in one of these two areas, or "marked limitations" in both. (ECF No. 14 at 10).

### 1. *Legal Standards*

At Step 3 of the sequential evaluation, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or medically equals an impairment in the Listings. 20 C.F.R. §§ 404.1520(d), 416.920(d). The Listings specify certain physical and mental impairments that are considered "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). The Listings serve to "streamline[ ] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987).

A claimant bears the burden of proving that an impairment meets or equals a Listing. *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir.1991). More specifically, the claimant must provide medical evidence to establish that the claimed impairments meet the very specific criteria identified in the Listing, and its duration requirement. 20 C.F.R. §§ 404.1525(c), 416.925(c). Thus, an impairment that meets only some of the Listing requirements, no matter how severe, does not qualify. *Prince v.*

*Comm'r of Soc. Sec. Admin.*, 551 F. App'x 967, 969 (11th Cir. 2014); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).  Rather, to "equal" a Listing, the medical findings must be "at least equal in severity and duration to the criteria" of a Listing.  20 C.F.R. §§ 404.1526(a), 416.926(a).  Ultimately, if the claimant's impairments meet or equal a Listing, the claimant will be found disabled at Step 3. 20 C.F.R. §§ 404.1520(d), 416.920(d).

> 2. *The ALJ Properly Found that Plaintiff Did Not Meet Listing 12.10*

Relevant here, Listing 12.10 (autism spectrum disorder) requires that the claimant establish the requirements of Paragraphs A and B, which provide:

A. Medical documentation of <u>both</u> of the following:

> 1. Qualitative deficits in verbal communication, nonverbal communication, and social interaction; and
> 2. Significantly restricted, repetitive patterns of behavior, interests, or activities.

AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

> 1. Understand, remember, or apply information (see 12.00E1).
> 2. Interact with others (see 12.00E2).
> 3. Concentrate, persist, or maintain pace (see 12.00E3).
> 4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.10.

As discussed below, the undersigned finds that substantial evidence supports the ALJ's determination that Plaintiff's autism disorder did not meet all the requirements of Paragraph B of Listing 12.10 because Plaintiff had only mild and moderate limitations in two of the four areas of mental functioning.

a. Interacting with Others

In finding that Plaintiff had a "moderate limitation" in the area of interacting with others,[3]

the ALJ stated:

> In interacting with others, [Plaintiff] has a moderate limitation. During a mental status examination, [Plaintiff] reported he felt uncomfortable speaking in crowds (1F/5). In addition, during an exam, [Plaintiff] was withdrawn with poor eye contact, slow/soft speech, and flat affect (1F/6). During intellectual testing, [Plaintiff]'s father reported the claimant did not speak until age three, and he had difficulties making friends, speaking in class, maintaining eye contact, and relating to others (2F/1). Further, [Plaintiff] testified he has social difficulties, and he could not speak in class or give presentations. In contrast, [Plaintiff] reported he did not have any problems getting along with family, friends, neighbors, or others (4E/5). Additionally, he consistently reported he was doing well with his medications throughout the period at issue (5F/8-10, 12-13, 16-17, 19, 21, 23, and 25-26; 6F/2, 4, 6, 8, 10-11, 13, 15; and 7F/1-3, 5, 7).

(R. 14).

The ALJ concluded that Plaintiff's reports and the medical and other evidence supported no more than a mild and a moderate limitation in two of the four areas of mental functioning in Paragraph B. Plaintiff asserts, however, that the ALJ did not sufficiently credit the following medical and other evidence in her Decision: (i) Plaintiff's Function Report, dated September 2021 (R. 281-88); (ii) Third-Party Function Report completed by Plaintiff's father, dated February 2022 (R. 289-96); (iii) Intellectual Report by consultative examiner Addys Prieto, dated January 2011 (R. 412-15); and (iv) Plaintiff's testimony during the administrative hearing (R. 40-47). (ECF No. 14 at 4-9). For the reasons discussed below, the undersigned disagrees.

---

[3] Social Security regulations define the ability to "interact with others" as the ability to "relate to and work with supervisors, co-workers, and the public," by, for example, "cooperating with others; asking for help when needed; handling conflicts with others; stating own point of view; initiating or sustaining conversation; understanding and responding to social cues (physical, verbal, emotional); responding to requests, suggestions, criticism, correction, and challenges; and keeping social interactions free of excessive irritability, sensitivity, argumentativeness, or suspiciousness." 20 C.F.R. Pt. 404, Subpt. P, § 12.00(E)(2).

First, throughout her consideration of Listing 12.10, the ALJ discussed Plaintiff's statements in his Function Report, that he: (i) did not need special reminders to take care of his personal needs or to take his medications; (ii) had no problems getting along with family, friends, neighbors, or others; (iii) could count change, handle a savings account, and use a checkbook; (iv) could follow spoken and written instructions "pretty well;" (v) handled stress and changes in routine "not so well;" and (vi) had no problem with personal care, prepared meals, performed housework, and shopped in stores for food and video games. (R. 14-15). The ALJ also considered the Third-Party Function report by Plaintiff's father. (R. 20). As to the father's Third-Party Function Report, the ALJ wrote:

> The undersigned finds the statements of [Plaintiff]'s father unpersuasive, as they are inconsistent with the record and the record does not support the statements (5E). In terms of supportability, [Plaintiff]'s father relied on subjective complaints and symptoms, which the undersigned finds inconsistent with the overall record. Further, these statements do not outweigh the accumulated medical evidence regarding the extent to which [Plaintiff]'s impairments limit his functional abilities. Ultimately, these statements are not persuasive for the same reasons set forth above in finding [Plaintiff]'s allegations to be less than wholly consistent with the objective medical evidence.

(R. 20). The ALJ's Decision, read as a whole, belies Plaintiff's arguments that the ALJ failed to consider the challenged Function Reports. *See MacGregor*, 786 F.2d at 1053 (noting that the court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence"); *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1265 (11th Cir. 2024) (noting that an ALJ's decision should be read as a whole).

Plaintiff's argument that the ALJ failed to properly consider the results in the Intellectual Report (by clinical psychologist Addys Prieto) fares no better. *See* (ECF No. 14 at 4-5). The ALJ explained:

> In 2011, in January, during intellectual testing, [Plaintiff]'s father reported [Plaintiff] did not speak until age three, and he had difficulties making friends, speaking in class, maintaining eye contact, and relating to others (2F/1). In

addition, behavioral observations revealed no psychomotor impairments, purposeful but poorly articulated speech at times, orientation to person, place, and time, and a congruent mood and affect. [Plaintiff] used few words to express himself, and he avoided eye contact throughout the evaluation. Further, [Plaintiff] did not easily establish rapport until his father left the room, when [Plaintiff] began to engage and establish rapport. [Plaintiff] obtained a verbal IQ score of 92, a performance IQ score of 100, and a full-scale IQ score of 96, placing him within the average range of intellectual functioning (2F/2)

(R. 17). Later, the ALJ reiterated, in part:

In January 2011, Consultative Examiner, Addys Prieto, Psy.D., noted [Plaintiff]'s intelligence fell in the average range of intellectual functioning and diagnosed [Plaintiff] with Asperger disorder (2F/2-3). Dr. Prieto's findings of a full-scale IQ score of 96, avoidance of eye contact, and poor speech articulation at times support her notes (2F/2). Although Dr. Prieto did not provide specific opinion, the undersigned finds her diagnosis persuasive because it is consistent with the medical evidence.

(R. 20).

As well, the ALJ's Decision, read as a whole, reflects the ALJ's thorough consideration of

Plaintiff's hearing testimony and the medical evidence of record. The ALJ accurately summarized

Plaintiff's hearing testimony as follows:

[Plaintiff] testified to the following: His autism prevents him from working due to sensory issues. He watches television and movies during the day. He does household chores sometimes. He takes medication for anxiety with no side effects. He listens to audiobooks, biographies. He is not sure if he could do a simple job not working with people. He lives with his father but spends most of his time by himself. He plays video games. He told his healthcare providers everything was okay because it is hard for him to talk, and he did not want to talk to the providers. He tried a job as a busboy but found it overwhelming. When he was in school, he had social difficulties; he could not speak in class or give presentations due to anxiety. His anxiety causes aches between his legs and overwhelming emotion. A job interview would be very difficult for him. He does not have the energy to go outside. He does not drive, other drivers on the road make him nervous. Therapy did not help his symptoms.

(R. 16). As discussed in greater detail in Section IV(B)(2), below, the ALJ concluded that Plaintiff's

statements about the intensity and limiting effects of his symptoms, were not consistent with the

record. Instead, the ALJ found that:

> As for [Plaintiff]'s statements about the intensity, persistence, and limiting effects of his symptoms, they were inconsistent with the record. [Plaintiff]'s allegations that he could not work due to his autism, as well as his anxiety, do not fully synchronize with the record (Hearing Testimony). For example, he consistently reported he was doing well with his medications throughout the period at issue (5F/8-10, 12-13, 16-17, 19, 21, 23, and 25-26; 6F/2, 4, 6, 8, 10-11, 13, 15; and 7F/1-3, 5, 7). In addition, [Plaintiff] obtained a verbal IQ score of 92, a performance IQ score of 100, and a full-scale IQ score of 96, placing him within the average range of intellectual functioning (2F/2). Further, he had normal mental status examinations during the relevant period (3F/55-56, 66, 69-70; 4F/5-6, 31; and 5F/6-7).

*Id.* Moreover, in addition to Plaintiff's consistent reports to his doctors that he was doing well on his medication, mental status examinations also consistently reflected Plaintiff's mood as "euthymic" (i.e., stable, normal, and balanced, with no mood disturbances). (R. 14-15); *see* https://www.healthline.com/health/euthymic#How-to-identify-a-euthymic-mood (last visited Sept. 24, 2025). Plaintiff appeared calm and cooperative, with normal language and no observed symptoms of anxiety. (R. 543-44, 547, 551, 555, 565, 570, 618, 622, 626, 630, 634, 639, 643, 647-48, 652, 656-57, 661).

Against this factual backdrop, the undersigned finds the ALJ's determination that Plaintiff has a moderate limitation in his ability to interact with others is supported by substantial evidence. Plaintiff's argument that the ALJ did not adequately consider certain evidence is an invitation for this Court to reweigh the evidence. The undersigned declines to do so. *See Winschel*, 631 F.3d at 1178. Rather, the undersigned reviews the evidence to determine whether the ALJ's finding of a moderate limitation in this category is supported by substantial evidence and whether the ALJ applied the proper legal standards. The answer to both questions is yes.

b.   Adapt or Manage Oneself

In finding that Plaintiff had a "mild limitation" in the area of adapting or managing himself,[4]

the ALJ stated:

> As for adapting or managing oneself, [Plaintiff] has experienced a mild limitation. [Plaintiff] reported he handled stress and changes in routine "not so well" (4E/7). During intellectual testing, [Plaintiff] had impaired judgment (2F/2).  In addition, [Plaintiff] testified therapy did not help his symptoms.  In contrast, [Plaintiff] reported he had no problem with personal care, he prepared meals, performed housework, and shopped in stores (4E/2-4).  Further, he consistently reported he was doing well with his medications throughout the period at issue (5F/8-10, 12-13, 16-17, 19, 21, 23, and 25-26; 6F/2, 4, 6, 8, 10-11, 13, 15; and 7F/1-3, 5, 7).  Moreover, he had normal mental status examinations during the relevant period (3F/55-56, 66, 69-70; 4F/5-6, 31; and 5F/6-7).  In summary, [Plaintiff]'s reports and the medical evidence support no more than mild limitation.

(R. 15).

The evidence discussed in Section IV(A)(2)(a) above supports the ALJ's finding that Plaintiff has only a mild limitation in this area and is incorporated herein.  In brief, Plaintiff and his father reported that Plaintiff follows written and spoken instructions "pretty well" and gets along with authority figures "very well."  (R. 286, 294-95).  Plaintiff scored within the average range of intellectual functioning on the WAIS-III psychological test.  (R. 413).  Moreover, despite Plaintiff's social difficulties, Plaintiff could perform personal activities of daily living (e.g., house chores, simple cooking, pet care) and self-care.  (R. 414).  Accordingly, the undersigned finds the ALJ's consideration of the evidence, as discussed previously, supports the ALJ's determination that

---

[4] Social Security regulations define the ability to "adapt or manage oneself" as the ability to "regulate emotions, control behavior, and maintain well-being in a work setting," by, for example, "responding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions."  20 C.F.R. Pt. 404, Subpt. P, § 12.00(E)(4).

Plaintiff has a mild limitation in his ability to adapt or manage himself, and her Decision is supported by substantial evidence.

Plaintiff has not established that he met or equaled the criteria in Paragraph B of Listing 12.10.

**B.  The ALJ Properly Evaluated Plaintiff's Subjective Complaints**

Next, Plaintiff argues that the ALJ erred in evaluating Plaintiff's subjective complaints and his responsiveness to medication.  (ECF No. 14 at 1, 13-18).  The undersigned, however, finds no error in the ALJ's Decision.

*1.  Legal Standards*

A claimant's statements about his symptoms, without more, are insufficient to establish disability.  *See* 20 C.F.R. §§ 404.1529(a), 416.929(a) (a claimant's statements regarding pain or other symptoms do not establish disability if unsupported by objective medical evidence that claimant's medical impairment could reasonably be expected to produce pain or other symptoms as alleged).  Thus, when a claimant attempts to show disability through his own testimony, the ALJ follows a two-step process: "Step one is to determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms." *Contreras-Zambrano v. Comm'r of Soc. Sec. Admin.*, 724 F. App'x 700, 703 (11th Cir. 2018) (citing SSR 16-3p).  "Step two is to evaluate the intensity and persistence of an individual's symptoms, such as pain, and determine the extent to which an individual's symptoms limit [his] ability to perform work-related activities." *Id.* at 703-04; *see* 20 C.F.R. §§ 404.1529(c), 416.929(c); *see also* 20 C.F.R. §§ 404.1545(e), 416.945(e).  In conducting this two-step inquiry, the ALJ considers "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [a claimant's] statements and the rest of the evidence, including [the claimant's] history,

the signs and laboratory findings, and statements by [the claimant's] medical sources or other persons about how [the claimant's] symptoms affect [him]."   20 C.F.R.  §§ 404.1529(c)(4), 416.929(c)(4).  A claimant's symptoms, including pain, will be determined to diminish his capacity for basic work activities to the extent that his alleged functional limitations due to symptoms, such as pain, "can reasonably be accepted as consistent with the objective medical evidence and other evidence."  20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

When the ALJ discredits a claimant's subjective statements, the ALJ must provide "explicit and adequate reasons for doing so."  *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Whitmore v. Comm'r Soc. Sec. Admin.*, 855 F. App'x 641, 643 (11th Cir. 2021); *see also Woodall v. Kijakazi*, No. 20-CV-60822, 2023 WL 3161751, at *9 (S.D. Fla. Apr. 3, 2023), *report and recommendation adopted*, 2023 WL 3168471 (S.D. Fla. Apr. 28, 2023) (remanding for ALJ to "explain his reasons for either accepting claimant's testimony or articulate adequate reasons to reject it").  "Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true."  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)).  Conversely, the Court will not disturb a clearly articulated finding about subjective complaints that is supported by substantial evidence.  *Venturella v. Kijakazi*, 21-CV-61838, 2022 WL 4110699 (S.D. Fla. Aug. 18, 2022), *report and recommendation adopted,* 2022 WL 4110339 (S.D. Fla. Sept. 8, 2022) (citing *Whitmore*, 855 F. App'x at 643).  In reviewing the ALJ's subjective symptom evaluation, the question is not "whether [the] ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it."  *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

2.   *The ALJ Properly Evaluated Plaintiff's Subjective Statements*

Here, after referencing the proper legal standards (*i.e.*, 20 C.F.R. §§ 404.1529, 416.929, and SSR 16-3p) and accurately summarizing Plaintiff's testimony, the ALJ concluded that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were "not entirely consistent with the medical evidence and other evidence in the record." (R. 16).  The ALJ explained:

> As for [Plaintiff]'s statements about the intensity, persistence, and limiting effects of his symptoms, they were inconsistent with the record.  [Plaintiff]'s allegations that he could not work due to his autism, as well as his anxiety, do not fully synchronize with the record (Hearing Testimony).  For example, he consistently reported he was doing well with his medications throughout the period at issue (5F/8-10, 12-13, 16-17, 19, 21, 23, and 25-26; 6F/2, 4, 6, 8, 10-11, 13, 15; and 7F/1-3, 5, 7).  In addition, [Plaintiff] obtained a verbal IQ score of 92, a performance IQ score of 100, and a full-scale IQ score of 96, placing him within the average range of intellectual functioning (2F/2).  Further, he had normal mental status examinations during the relevant period (3F/55-56, 66, 69-70; 4F/5-6, 31; and 5F/6-7).

(R. 16).  The ALJ ultimately concluded that:

> [T]he evidence of record supports the above residual functional capacity.  It is reasonable to limit [Plaintiff] to a range of unskilled work with restrictions on his interactions.  However, the nature of his treatment, the findings made during the [Plaintiff]'s treatment, and [Plaintiff]'s own statements about his limitations do not support a more restrictive finding.  For example, [Plaintiff] consistently reported he was feeling good, denied symptoms, and had normal mental status examinations throughout the period at issue.  While [Plaintiff] is limited to some degree, the record does not support that he is limited to the extent alleged.

(R. 20).

Plaintiff argues that the ALJ's evaluation is flawed because the ALJ failed to adequately consider: (i) Plaintiff's testimony that his autism prevents him from working due to "sensory issues" and that he struggled to speak with his healthcare providers (referencing (R. 42, 44)); (ii) the Function Reports, which reflected that Plaintiff could not handle stress well (referencing

16

(R. 287, 295)); (iii) the Intellectual Report by the consultative examiner, noting Plaintiff's "impaired judgment" (referencing (R. 414)); and (iv) medical evidence showing Plaintiff's continued difficulty going in public due to his anxiety (referencing (R. 642, 656)). (ECF No. 14 at 14-15, 17).

The undersigned has previously discussed the ALJ's consideration of this evidence, finding no error. *See* Sections IV(A)(2)(a), (b) *supra*. The undersigned reaches the same conclusion here. By way of example, contrary to Plaintiff's argument that the ALJ failed to consider Plaintiff's testimony regarding his sensory issues and reluctance to speak with healthcare providers, the ALJ's Decision notes that "[Plaintiff's] autism prevents him from working due to sensory issues. . . . [Plaintiff] told his healthcare providers everything was okay because it is hard for him to talk, and he did not want to talk to the providers." (R. 16). Indeed, the ALJ's thorough, chronological, 4-page, single-spaced summary of Plaintiff's medical visits, including mental status examination results, between 2009 and 2023, provide substantial evidence supporting the ALJ's determination that Plaintiff's subjective complaints were "not entirely consistent" with the medical and other evidence in the record. *See* (R. 16-20). Among other evidence, the ALJ discussed: (i) Plaintiff's statements that he could concentrate and keep up in school, was feeling well and getting A's, and had stable symptoms (R. 17) (citing Exh. 1F); (ii) medical visits where Plaintiff consistently appeared well-groomed, with appropriate thought process, euthymic mood, and no outward symptoms of anxiety (R. 17-18) (citing Exhs. 1F, 3F); and (iii) Plaintiff's repeated reports that his medications were controlling his symptoms (R. 16) (citing to Exh. 5F at 8-9, 12-13, 16, 19, 21, 23, 25; Exh. 6F at 2, 4, 6, 8, 10-11,13, 15; and Exh.7F at 1-3, 5, 7); (R. 19) (citing to Exh. 3F at 47, 60, 76, 84, 109, 114, 118; Exh. 4F at 1, 7-8, 10-12, 13-14, 16-17, 19-21, 22-23, 25-26, 28-29, 33-34, 36-37, 38-40).

Once again, the undersigned rejects Plaintiff's invitation to reweigh the evidence. The question for the undersigned is not "whether [the] ALJ could have reasonably credited [Plaintiff's] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner*, 421 F. App'x at 939. Against this legal and factual backdrop, the undersigned finds that the ALJ provided adequate and explicit reasons for discounting Plaintiff's subjective statements. *See Foote*, 67 F.3d at 1561-62. Accordingly, the ALJ applied the proper legal standards in evaluating Plaintiff's statements, and the ALJ's determination is supported by substantial evidence.

### C.  The ALJ's Failure to Resolve an Apparent Conflict was Harmless Error

Lastly, Plaintiff argues that the ALJ erred in failing to resolve an apparent conflict in reasoning skill levels ("RSL") between the RFC/VE's testimony and the DOT job description for one of three jobs identified by the VE at Step 5. (ECF No. 14 at 18-21). Relatedly, Plaintiff asserts that the case must be remanded for the ALJ to make a factual determination whether the two remaining non-conflicting jobs identified at Step 5 exist in significant numbers in the national economy. *Id.* at 21-27. For the reasons discussed below, the undersigned finds that any error in the ALJ's Step 5 determination is harmless and remand is unwarranted.

Here, the ALJ determined that Plaintiff had no past relevant work and proceeded to Step 5. (R. 20-21). At Step 5, the ALJ posed a hypothetical question to the VE that included Plaintiff's limitation to performing simple tasks and making simple work-related decisions. (R. 48). In response to this hypothetical, the VE identified three jobs that such an individual could perform: (i) food service worker, with an RSL of 3 and 50,300 available jobs in the national economy (DOT 319.677-014); (ii) meat clerk, with an RSL of 2 and 64,600 available jobs (DOT 222.684-010); and (iii) package sealer, with an RSL of 2 and 27,900 available jobs (DOT 920.685-074). (R. 21, 49).

Relevant to Plaintiff's argument, although an individual limited to simple tasks can perform jobs with an RSL of 1 or 2,[5] the Eleventh Circuit has determined that such an individual cannot perform jobs with an RSL of 3.[6] *See Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1317 (11th Cir. 2021) (finding "that there is an apparent conflict between an RFC limitation to simple, routine, and repetitive tasks and level 3 reasoning").  In light of the Court's ruling in *Viverette*, Plaintiff argues that the case must be remanded for the ALJ to determine whether the two remaining jobs (meat clerk and package sealer) exist in significant numbers in the national economy.  As discussed below, after considering the facts of this case and the applicable law, the undersigned concludes that *Viverette* does not require remand and that the ALJ's error at Step 5 is harmless in light of the two remaining non-conflicting jobs, which exist in significant numbers in the national economy.

    *1.  Legal Standards*

Pursuant to SSR 00-4p, the ALJ must resolve any apparent conflict between the RFC/VE testimony and the DOT.  2000 WL 1898704 (Dec. 4, 2000).  In relevant part, SSR 00-4p provides:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT.  When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.  At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.
>
> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict.  The adjudicator must resolve the conflict by determining if the explanation

---

[5] *See, e.g.*, *Peterson v. Comm'r of Soc. Sec.*, No. 21-10086, 2021 WL 3163662, at *3 (11th Cir. July 27, 2021) (finding "that there was no apparent conflict between an RFC limitation to simple, routine, repetitive tasks and the DOT's description of jobs requiring level two reasoning"); *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020) (same).

[6] An RSL of 3 requires the individual application of "commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and the ability to "[d]eal with problems involving several concrete variables in or from standardized situations."  DOT, App'x C, 1991 WL 688702 (4th ed. Rev'd 1991).

> given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

2000 WL 1898704, at *2.

The Eleventh Circuit addressed SSR 00-4p in *Washington v. Commissioner of Social Security*, 906 F.3d 1353 (11th Cir. 2018). In *Washington,* the Court held that an ALJ has an affirmative duty under SSR 00-04p "to identify, explain, and resolve" apparent conflicts between DOT data and VE testimony. *Id*. at 1356. The ALJ's "duty is not fulfilled simply by taking the VE at his word that his testimony comports with the DOT when the record reveals an apparent conflict between the VE's testimony and the DOT." *Id.* at 1362. Rather, "if a conflict is reasonably ascertainable or evident, the ALJ is required to identify it, ask about it, and resolve it in his opinion," even if the conflict is not identified by the parties. *Id*. at 1363, 1366. Moreover, an "apparent conflict" is "more than just a conflict that is made apparent by the express testimony of the VE. It is a conflict that is reasonably ascertainable or evident from a review of the DOT and the VE's testimony." *Id.* at 1365. At a minimum, a conflict is apparent if a "reasonable comparison of the DOT with the VE's testimony suggests that there is a discrepancy, even if, after further investigation, that turns out not to be the case." *Id*.

In a subsequent case, *Viverette v. Commissioner of Social Security*, the Eleventh Circuit held that an apparent conflict exists between an RFC limitation to simple, routine, and repetitive tasks and an RSL of 3. 13 F.4th at 1317. The court further held that, *on the record before it*, remand was necessary for the ALJ to make a factual determination on whether the remaining non-conflicting jobs existed in significant numbers in the national economy. *Id.* at 1318. Notably, the "record before it" included two circumstances relevant to its determination, neither of which is present in Plaintiff's case. First, the court noted that elimination of the conflicting job reduced the number of remaining available jobs in the national economy by more than 80%—a loss of 104,000 from the 125,000 jobs

initially identified by the VE.  *Id*.  Given that only 21,000 (about 20%) non-conflicting jobs remained, the court was "hesitant" to make the "significant numbers" determination, noting that "[w]here additional (or more specific) agency fact-finding is needed, remand is the appropriate disposition."  *Id*.  Second, the court found the VE's testimony to be unreliable as to one of the remaining non-conflicting jobs because the VE may have included other occupations with an RSL greater than 1 or 2.  *Id.* at 1319.  Under these circumstances, the court found that this error was not harmless.  *Id.* at 1318.

"A harmless error—that is, one that does not affect the ALJ's ultimate decision—does not constitute a ground for reversal."  *Sarli v. Berryhill*, 817 F. App'x 916, 917 (11th Cir. 2020) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).  The purpose of the harmless error rule is to avoid wasting time and preserve judicial resources.  *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir.1988).  Thus, a factual error by an ALJ may be subject to harmless error analysis.  *Clark v. Comm'r of Soc. Sec.*, No. 17-CV-501-FtM-99DNF, 2019 WL 1091244, at *4 (M.D. Fla. Mar. 8, 2019) (citing *Diorio*, 721 F.2d at 728).  Moreover, incorrect application of the regulations may result in harmless error where the correct application would not contradict the ALJ's ultimate findings.  *Caldwell v. Barnhart*, 261 F. App'x 188, 190 (11th Cir. 2008) (citation omitted).  "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

### 2.  The ALJ's Error at Step 5 is Harmless

Under the facts of this case, any error at Step 5 in not resolving the apparent RSL conflict between the RFC/VE's testimony and the DOT for the food service worker position is harmless because the VE identified two other non-conflicting occupations (meat clerk and package sealer),

with 92,500 jobs in the national economy (65% of the initial job pool identified at Step 5) that remained available to Plaintiff after the conflicting jobs were eliminated.  (R. 21).

Plaintiff relies on *Viverette* and post-*Viverette* case law to support his argument that remand is required for the ALJ to make the factual determination of whether the remaining jobs exist in the national economy in "significant numbers."  *See* (ECF Nos. 14 at 21-22, 20 at 4-5).  The undersigned is aware of these cases (and others) where courts in this Circuit, mainly in the Middle District of Florida, have remanded for such a determination pursuant to *Viverette*.  As discussed below, however, the undersigned does not find these cases persuasive on the record before the Court and declines to follow them.[7]  Indeed, the cases cited by Plaintiff take a brightline/hardline approach in applying *Viverette*, remanding cases where the apparent conflict excluded *any number* of jobs and the ALJ had not initially determined whether the remaining jobs, separately or combined, existed in "significant numbers."  *See Hurst v. O'Malley*, No. 23-00137-N, 2024 WL 4342792, at *12 (S.D. Ala. Sept. 27, 2024).  A close reading of *Viverette*, however, does not require "so rigid a rule."  *Id.* at *13.  Rather, the undersigned "is persuaded by the Commissioner's argument and by district courts considering a similar argument, that the Eleventh Circuit has 'left the door open' for federal courts to evaluate whether the remaining jobs exist in significant numbers, such that the ALJ's error was harmless, where the number of positions under consideration, after excluding the error-tainted job, are remarkably higher than the relatively low number of positions in *Viverette*."  *Id.* (quoting

---

[7] Of the many cases cited by Plaintiff where courts routinely remanded to the ALJ for a "significant numbers" determination, only one is from the Southern District of Florida.  In *Lagrandeur v. O'Malley*, No. 23-CV-60829, 2024 WL 4881024, at *3-4 (S.D. Fla. Sept. 24, 2024), despite first acknowledging that as few as between 800 to 2,000 jobs have been found to constitute a "significant number" in the national economy, the Magistrate Judge nonetheless remanded for the ALJ to determine whether 310,000 remaining jobs from the initial pool of 360,000 was a "significant number."  *Id.* at 3.  For the reasons discussed in this Order, the undersigned respectfully disagrees that remand was warranted and finds this case unpersuasive.

*Thompson v. O'Malley*, No. CV623-001, 2024 WL 996745, at *4 (S.D. Ga. Feb. 15, 2024) (finding harmless error after excluding 101,000 conflicting jobs, leaving 300,000 jobs remaining)).

Here, unlike in *Viverette*—where only 21,000 (or 20% of the initial job pool) (at most) remained after the conflicting job was removed—92,500 jobs (or 65% of the initial job pool) remained available in the national economy that Plaintiff could perform.[8] (R. 21). Under these circumstances, and in the absence of any other uncertainty in the VE's testimony, the undersigned concludes, like many other post-*Viverette* courts in this Circuit and District, that *Viverette* does not categorically preclude the undersigned from finding that the two remaining jobs (meat packer and package sealer) exist in significant numbers in the national economy. *See, e.g., Hay v. Kijakazi*, No. 20-CV-62288, 2023 WL 8719154, at *9 (S.D. Fla. Dec. 17, 2023) (finding error would be harmless after excluding 47,000 conflicting jobs, leaving 221,000 jobs remaining); *Mesa v. Kijakazi*, No. 21-CV-20424, 2022 WL 4369733, at *14 (S.D. Fla. May 11, 2022), *report and recommendation adopted*, 2022 WL 4366950 (S.D. Fla. Sept. 21, 2022) (finding error would be harmless after excluding 13,000 jobs, leaving 306,800 jobs remaining); *Denmark v. Kijakazi*, No. 20-CV-2852-AEP, 2022 WL 831903, at *7 (M.D. Fla. Mar. 21, 2022) (finding harmless error after excluding

---

[8] Relatedly, the Eleventh Circuit has previously held that jobs with less than 92,500 positions were available in significant numbers in the national economy. *See, e.g.*, *Valdez*, 808 F. App'x at 1010 (finding that 78,000 available jobs in the national economy was substantial evidence to support the ALJ's finding on Step 5); *Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987) (concluding that 80,000 jobs in national economy constituted a significant number of jobs); *Atha v. Comm'r of Soc. Sec.*, 616 F. App'x 931, 935 (11th Cir. 2015) (concluding that 23,800 jobs nationally was a significant number of jobs); *see also Tellier v. Colvin*, No. 15-CV-663-J-JBT, 2016 WL 7438048, at *3 (M.D. Fla. Feb. 19, 2016) (concluding that error harmless because two occupations provided 68,000 jobs in the national economy); *Bacon v. Comm'r of Soc. Sec.*, 861 F. App'x 315, 320 (11th Cir. 2021) (pre-*Viverette* case finding harmless error where the ALJ identified other jobs the claimant could perform); *Wooten v. Comm'r of Soc. Sec.*, 787 F. App'x 671, 674 (11th Cir. 2019) (same); *Estate of White v. Saul*, No. 19-CV-61745, 2020 WL 5351064, at *18 (S.D. Fla. Aug. 26, 2020), *report and recommendation adopted*, 2020 WL 5291966 (S.D. Fla. Sept. 4, 2020) (same); *Jules v. Berryhill*, No. 18-CV-60963, 2019 WL 4737602, at *10 (S.D. Fla. Sept. 27, 2019) (same). These cases remain binding precedent.

72,000 jobs, leaving 551,000 jobs remaining); *Rodriguez v. Comm'r Soc. Sec. Admin.*, No. 21-CV-3002-DNF, 2022 WL 4364506, at \*5 (M.D. Fla. Sept. 21, 2022) (finding harmless error after excluding more than 115,000 jobs, leaving 220,000 (or 64%) jobs remaining); *Hurst,* 2024 WL 4342792, at \*13 (finding harmless error after excluding 236,000 jobs, leaving 423,000 (or 64%) jobs remaining); *Thompson*, 2024 WL 996745, at \*5 (finding harmless error after excluding 101,000 jobs, leaving 300,000 jobs remaining).

Thus, in the absence of binding precedent to the contrary, the ALJ's determination at Step 5 that Plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy remains supported by substantial evidence, even after excluding the 50,300 food service worker positions, where 92,500 non-conflicting jobs that Plaintiff could perform remained available. *See Thompson*, 2024 WL 996745, at \*5. The undersigned also finds that remanding this case to the ALJ to confirm that 92,500 remaining jobs is a significant number of available jobs would be an exercise in futility. *See, e.g.*, *Hay*, 2023 WL 8719154, at \*11; *Denmark*, 2022 WL 831903, at \*8; *Mays*, 837 F.2d at 1364. Thus, any error is harmless and the ALJ's Decision is affirmed. *See, e.g.*, *Hurst*, 2024 WL 4342792, at \*13; *Mesa*, 2022 WL 4369733, at \*14.

V.   **CONCLUSION**

In sum, for the reasons set forth above, Plaintiff's Motion (ECF No. 14) is **DENIED**, Defendant's Motion (ECF No. 18) is **GRANTED**, and that the ALJ's Decision is **AFFIRMED**.

**DONE AND ORDERED** at Chambers, in Fort Lauderdale, Florida on September 24, 2025.

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: All Counsel of Record

24